IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| MIKAL ANTHONY VIRGIL,<br><br>              Plaintiff,<br><br>v.<br><br>CREATIVE SERVICES, INC.,<br><br>              Defendant. | Case No.: 1:25-cv-10082<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Mikal Anthony Virgil ("Plaintiff" or "Mr. Virgil") by and through his counsel brings the following Complaint against Creative Services, Inc. ("Defendant" or "CSI") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* arising out of a background check report that Defendant sold to Plaintiff's prospective employer which falsely portrayed that Plaintiff had an "open" case status for a felony assault offense which was closed and did not result in conviction.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff has an "open" case for felony assault with dangerous weapon. Defendant's reporting is grossly inaccurate, misleading, and untrue.

4. Plaintiff's employment with his prospective employer was significantly delayed Plaintiff's prospective employer received an employment background check report from Defendant, which included the inaccurate status of the subject felony case. Furthermore, as of the date hereof, Plaintiff's employment with the prospective employer is still under question.

5. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Attleboro District Court, Massachusetts regarding the status of the felony assault case, which would have shown that the case was closed, without conviction.

6. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

7. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

8. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

**PARTIES**

9. Mikal Anthony Virgil ("Plaintiff" or "Mr. Virgil") is a natural person residing in Brooksville, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

10. Defendant Creative Services, Inc. ("Defendant" or "CSI") is a Massachusetts corporation doing business throughout State of Massachusetts and in this District, and has a principal place of business located at 64 Pratt Street, Mansfield, MA 02048 and can be served at its registered agent for service Kellie O'Shea at the same address.

11. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

12. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

**THE FCRA'S PROTECTIONS FOR JOB APPLICANTS**

15. The Fair Credit Reporting Act (FCRA), enacted to address widespread inaccuracies and lack of regulation in consumer reports, requires consumer reporting agencies, like Defendant, to implement reasonable procedures to ensure maximum possible accuracy, as inaccuracies and errors in such reports can harm consumers by failing to provide fair, accurate, and confidential information.

16. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

17. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

18. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

19. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

20. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

21. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

22. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

23. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

24. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

25. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

26. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

27. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

28. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

29. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

30. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a closed felony assault case as being open.

31. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a founding member of the Professional Background Screening Association ("PBSA"). Defendant has played a significant role in PBSA's development and governance. PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTUAL ALLEGATIONS

### Plaintiff Applies for Employment with Pure Oasis LLC ("Pure Oasis")

32. On or about December 10, 2024, Plaintiff applied for full-time employment as an Inventory Associate with Pure Oasis. The position was full time and paid $17.00 an hour.

33. Plaintiff has extensive experience working as an inventory manager. Therefore, Pure Oasis assessed that he is overqualified for the job and offered him the job without an in-person interview. However, the job offer was still conditioned upon Plaintiff passing a background check ("consumer report.")

34. On or about December 11, 2024, Pure Oasis ordered a criminal background check on Plaintiff from Defendant.

### Defendant Published Inaccurate and Misleading Information to Pure Oasis

6

35. Pure Oasis contracted with Defendant to conduct background checks, including criminal background checks, on its prospective and current employees.

36. On or about December 13, 2024, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Pure Oasis.

37. Defendant's consumer report about Plaintiff included a stigmatizing felony assault with dangerous weapon with a grossly inaccurate and misleading "open" case status from Attleboro District Court, Massachusetts, which appeared in the consumer report as follows:



38. Public court records confirm that the criminal case was dismissed and closed.

39. The sole reason the inaccurate and misleading "open" case status was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

40. Had Defendant followed reasonable procedures, it would have discovered that the subject criminal case was *dismissed* and *closed*.

41. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Pure Oasis Denies Plaintiff's Employment Application

42. On or about December 13, 2024, Plaintiff was notified by Pure Oasis that his employment application was denied as a direct result of the "open" case reported by Defendant.

43. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked upon reviewing the status of the criminal record contained within the subject consumer report.

44. On or about December 15, 2024, Plaintiff disputed the criminal record information with Defendant.

45. On December 23, 2024, Plaintiff received an email confirmation from Defendant that they finished its investigation and corrected the status of the criminal record to be shown as closed.

46. Prior to that date, Plaintiff followed up with Pure Oasis to expediate the process of enrolling, Pure Oasis informed Plaintiff that they had to wait for an updated consumer report from Defendant before proceeding with any further application process.

47. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Pure Oasis formed a negative opinion about Plaintiff which was the reason for an arranged in person interview, even though he previously was offered the job without an in-person interview.

48. As of the date hereof, Plaintiff has not started working for Pure Oasis and his employment prospects with Pure Oasis is under question.

49. Defendant's false report and unreasonable procedures significantly delayed Plaintiff's employment with pure Oasis at the very least, and may have cost Plaintiff a promising, well-paying job.

50. The position with Pure Oasis was full-time and Plaintiff was set to earn $17.00 per hour with a benefits package. More importantly, Plaintiff was excited to work as inventory manager because he was qualified to successfully perform the work and was passionate about the field.

51. Plaintiff has been unemployed since July 2024 and has been struggling ever since to pay his bills and cover his living expenses. Plaintiff had hope that his struggle would soon be over when Pure Oasis offered him a job. Since Plaintiff's employment application with Pure Oasis, Plaintiff has fallen behind on his car payments, and has incurred late fees. If Plaintiff misses one more monthly payment, Plaintiff's car will get repossessed. Plaintiff has already expended $8,000 on principal payments and had spent $18,000 for a new engine earlier last year.

52. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, temporarily loss of employment opportunities, wages, and benefits; loss of economic opportunities; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**

**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

53. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

54. At all times pertinent hereto, the above-mentioned background check report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

55. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

56. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

57. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

58. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: January 13, 2025,

By: */s/ Adam L. Deutsch*
Adam L. Deutsch, MA No. 569173
Northeast Law Group, LLC
7 Purves St, STE 12
East Longmeadow, MA 01028
T: (413) 285-3646
F: (413) 200-3305
E: adam@northeastlawgroup.com

*Attorney for Plaintiff,*
*Mikal Anthony Virgil*